STATE OF IOWA, Appellee, v. G. F. KRITTENBRINK, Appellant.

**TRIAL:** Instructions—**Nonapplicability to Pleadings.** Manifestly, the court should refuse instructions relative to facts which are entirely immaterial to any issue in the case.

**APPEAL AND ERROR:** Harmless Error—**Improper Offer.** Reversible error may not be based on an improper question which is promptly excluded.

**CRIMINAL LAW:** Trial—**Defendant's Failure to Testify.** It is not improper for the county attorney in good faith to assert that certain testimony stands uncontradicted, even though the accused is the only person who could dispute it, and he declined to be a witness.

**CRIMINAL LAW:** New Trial—**Newly Discovered Testimony.** Newly discovered cumulative testimony is not ground for a new trial in a criminal cause.

*Appeal from Union District Court.*—H. K. EVANS, Judge.

MARCH 6, 1923.

REHEARING DENIED APRIL 4, 1924.

THE defendant appeals from a judgment of conviction on an indictment charging him with obtaining property by false pretenses.—*Affirmed.*

*Higbee & McEniry* and *F. B. Wilson,* for appellant.

*Ben J. Gibson,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, and *E. L. Carroll,* County Attorney, for appellee.

WEAVER, J.—The substance of the charge against the ap-

pellant is that, in a business deal with one Leonard Lent, wherein he undertook to sell and transfer to Lent a stock of merchandise, defendant unlawfully, feloniously, designedly, and by false pretense obtained the signature and delivery to him by said Lent of a bank check for the sum of $2,000 and a promissory note for the further sum of $2,000, with intent to defraud, such fraud having been accomplished, it is alleged, by falsely representing to said Lent that said stock of merchandise so sold and transferred was fully paid for and free from all liens and incumbrances, when, in truth and in fact, there was then due and owing thereon unpaid purchase money to the amount of $1,057.49, to the Tootle-Campbell Dry Goods Company, a claim for which said Lent was afterward held liable.

To this accusation defendant entered a plea of not guilty. Trial was had to a jury, resulting in a verdict of guilty; and from the judgment entered thereon, he appeals to this court.

I. The first contention for a reversal is upon the proposition that the alleged false representations are not supported by the evidence, and that there is a failure to prove that Lent believed and relied upon the alleged false statements of the defendant.

As is not unusual in cases of this character, there is a sharp and irreconcilable conflict in the testimony of witnesses, and if the jury accepted the truth of the showing made in the defendant's behalf, an acquittal would necessarily follow; but it cannot be said that the verdict of guilty is without support in the evidence. It is shown without dispute that defendant did undertake to sell the stock of goods to Lent at the estimated price and value of $8,500, and that, in consideration of such sale, Lent conveyed to defendant a certain house and lot at $4,500, and gave him a check for the further sum of $2,000 and a promissory note for a deferred payment of $2,000. It is also conceded that, in the consummation of the deal, defendant executed and delivered to Lent a written bill of sale of the stock of goods, in which writing he expressly warranted the title to said property, and that the same was free from incumbrance and liens. Except for the bill of sale, the details of the transaction were not reduced to writing. There was also evidence by Lent that, when defendant proposed the deal, he, the witness, asked defendant,

"How about the stuff,—is it clear or is it mortgaged?" and to this question defendant said, "No, he would trade it to me clear." Again, Lent testifies "that the stock was to be traded clear, was mentioned twice prior to the execution of the bill of sale." The testimony further tended to show that, after the deal had been consummated, a creditor of the defendant's presented a bill of about $600 for goods which had gone into this stock, and upon Lent's calling defendant's attention to the matter, it was so arranged that Lent should advance the money necessary to pay this claim and to pay off an overdraft due the local bank by defendant, the amount of such advancements to be applied as a credit on the note for $2,000 which the latter had given, as aforesaid. The note was thus taken up, and Lent executed a new note for about $700 for the unpaid remainder. At about the same time, it appears that the bill to the Tootle-Campbell Dry Goods Company for $1,507.49 was presented; and, according to Lent, when defendant was informed of the fact, he claimed to have just remitted or paid the amount of said claim. It was not, in fact, paid, and thereafter the Tootle-Campbell Dry Goods Company brought suit thereon against both defendant and Lent, and recovered judgment against them therefor. The appellant did not testify as a witness in his own behalf in the present case. In support of the defense, two employees of the defendant's who were in the store at the time of the trade testified, in substance, to hearing more or less of the negotiation between the parties, and that in the course of it defendant mentioned the Tootle-Campbell Dry Goods Company's claim, and said to Lent, "You will take care of this invoice and I will take care of the other;" and that Lent assented thereto. A brother of defendant's also testified to a corroborating statement or admission by Lent. Lent denies any such conversation or statement. His attention was also called to a letter written by him to defendant, in which he speaks of a bill to Tootle-Campbell Company which "I am to pay." This statement is explained by him as referring to a bill for about $60 for goods which were not in stock at the time of the trade with defendant, but which were delivered thereafter, and which he, Lent, concedes were properly chargeable to him; and this explanation does not appear to be denied. Moreover, this contention on the part of ap-

pellant is quite inconsistent with the admitted terms of the sale to Lent. According to the undisputed testimony and the terms of the written bill of sale, the total purchase price of the stock to be paid by Lent was $8,500, and this was made up of the item of house and lot, at $4,500, together with the cash or check of $2,000, and Lent's promissory note for the remainder of $2,000, which aggregates the entire sum,—a circumstance which tends to negative the existence of any promise or undertaking by Lent to pay the outstanding debt of defendant for a further sum of over $1,500. In the face of the entire record, it must be said that the jury was justified in returning a verdict of guilty, as charged in the indictment.

II. Exception was taken to the refusal of the court to instruct the jury that "a lien on personal property is, in law, somewhat of the nature of a mortgage, and under the bulk sales law, the transfer of a stock from seller to purchaser does not constitute a lien on the stock of goods transferred." The request was properly denied. It is entirely true that "a transfer of a stock of goods does not constitute a lien on the stock," but it is also entirely immaterial. It is true, however, that a transfer or sale of a stock of merchandise in bulk, without giving the notice required by statute, Chapter 64, Acts of the Thirty-seventh General Assembly, renders the purchaser chargeable for the value thereof, in favor of the unpaid creditors of the seller. Technically, this may not constitute a lien, but it does impose an incumbrance or burden upon the goods so sold, in the hands of the purchaser, and the existence of a valid claim of that character constitutes a breach of the seller's warranty. Upon no conceivable theory of the present case was the requested instruction allowable.

*1. TRIAL: instructions: nonapplicability to pleadings.*

III. Appellant charges counsel for the State with misconduct in asking a witness whether he knew of another alleged act of fraudulent misrepresentation by the defendant. The question met with prompt objection by counsel for defendant, and the objection was sustained, and the answer excluded. Without stopping to consider or decide upon the admissibility of the evidence, it is sufficient, for the purposes of this case, that the ruling was in de-

*2. APPEAL AND ERROR: harmless error: improper offer.*

fendant's favor, and no prejudice to him could have thereby been sustained. Counsel for the State appears to have respected the ruling, and did not thereafter persist in offering testimony of that character.

Further complaint is made that counsel for the State in argument improperly alluded to the fact that defendant had not submitted to examination as a witness. This is based upon the fact that counsel in argument made and repeated the statement that no witness had denied certain alleged material facts. Counsel for the prosecution is, of course, bound by the letter and spirit of the statute, and by proper regard for the ethics of the profession, to observe and respect the defendant's rights in this respect; but if, in good faith, he conceives that pertinent facts developed by the State tending to prove guilt have not been met or denied, we think it within the scope of his privilege to remind the jury of that fact. We discover nothing in this case which constitutes error in this respect.

3. CRIMINAL LAW: trial: defendant's failure to testify.

IV. Defendant moved for a new trial on the ground that, since the verdict, he has ascertained that one of the jurors, upon his *voir dire*, concealed the fact that he was indebted to the defendant, and upon the further ground of newly discovered evidence to the effect that the complaining witness had admitted to one Lobdell his agreement to assume and pay the bill held by the Tootle-Campbell Dry Goods Company. The motion was denied, and error is assigned on the ruling. The ground of the objection to the juror is disputed, and there is an entire absence of any showing from which any prejudice can be presumed to have resulted to the defendant. The evidence proposed to be given by the witness Lobdell is clearly cumulative, and insufficient to justify a new trial. See *State v. King*, 97 Iowa 440, and *State v. Sangster*, 196 Iowa 495.

4. CRIMINAL LAW: new trial: newly discovered testimony.

The charge of the court fully and fairly covers the several points of law argued by counsel. The case appears to have been fairly tried, and the judgment of the district court is—*Affirmed.*

PRESTON, C. J., STEVENS and DE GRAFF, JJ., concur.